10-1772-TSH

# EXHIBIT A

## AFFIDAVIT OF AMY Z. DIAMOND

I, Amy Z. Diamond, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed as such since April 2009. I am currently assigned to the Economic Crimes Squad of the Boston field office. My responsibilities include the investigation of federal offenses including bank fraud, wire fraud, other federal financial crimes, and conspiracy to commit such crimes.

2. I am aware that Title 18 of the United States Code, Section 1343, makes it a crime for anyone who has devised or intended to devise a scheme or artifice to defraud, or obtain money or property by means of false or fraudulent pretenses, representations, or promises to transmit or cause to be transmitted by means of wire, radio, or television communications in interstate commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. Having so said, I make this affidavit in support of a criminal complaint charging Arthur Samuels ("SAMUELS") with wire fraud in violation of Title 18, United States Code, Sections 1343 and 2.

3. At all times material to this complaint, SAMUELS was an individual who lived in Mattapan, Massachusetts. SAMUELS was employed by Bank of America as a Branch Manager of the Fields Corner Branch located in Dorchester, Massachusetts.

4. The facts stated herein are based on my own personal involvement with this investigation, as well as from information provided to me by other law enforcement officers involved in the investigation. In submitting this affidavit, I have not included

1

each and every fact known to me about this investigation. Rather, I have only submitted those facts which I believe are sufficient to establish probable cause.

5. At all times material to this complaint, M.D.S. (the "Developer") was the owner and operator of a real estate development company located in Boston, Massachusetts. The Developer was also the owner and operator of an apartment building management company located in Boston, Massachusetts.

6. M.A. was an attorney licensed to practice law in the Commonwealth of Massachusetts. M.A. maintained a law office in Stoneham, Massachusetts and controlled bank account Number XXXXXX0057 at Central Co-Operative Bank, located at 399 Highland Avenue, Somerville, Massachusetts.

7. SAMUELS and an individual referred to herein as "K.B-S" were persons who were recruited to serve as a "straw buyers."

8. As used in this complaint, the term "straw buyer" refers to an individual in whose name real property was purchased and in whose name financing from mortgage lenders was fraudulently obtained. In most instances, the straw buyers made no down payment, paid no closing costs, had no intention to reside in the real property, and had no personal ability or intention to make the mortgage loan payments.

9. The Developer, M.A., SAMUELS, and others recruited straw buyers to participate in the scheme described in this complaint.

10. Gateway Funding Diversified Mortgage Services, LP ("Gateway Funding") was a real estate mortgage company with a principal place of business at 300 Welsh Road, Horsham, Pennsylvania.

2

11. First Horizon Home Loans ("First Horizon") was a real estate mortgage company with a principal place of business at 4000 Horizon Way, Irving, Texas.

12. National City Mortgage Corporation ("National City") was a real estate mortgage company with a principal place of business at 3232 Newmark Drive, Miamisburg, Ohio.

13. Premium Capital Funding, LLC ("Premium Capital Funding") was a real estate mortgage company with a principal place of business at 125 Jericho Turnpike, Jericho, New Jersey.

14. Salem Five Cents Savings Bank ("Salem Five") was a federally insured financial institution with a principal place of business at 210 Essex Street, Salem, Massachusetts.

15. Gateway Funding, First Horizon, National City, Premium Capital Funding, and Salem Five are collectively referred to herein as "the mortgage lenders."

## THE SCHEME TO DEFRAUD

16. Beginning in or about September 2006, and continuing through in or about April 2008, the Developer, together with M.A., SAMUELS, and other associates of the Developer known and unknown to the United States Attorney, engaged in a scheme to defraud the mortgage lenders and to obtain money, funds, credits, assets, and other property owned by and under the custody and control of the mortgage lenders by means of material false and fraudulent pretenses, representations and promises, in connection with the financing of residential real estate purchases in Boston, Massachusetts using "straw buyers" recruited by the Developer, M.A., SAMUELS, and others.

17. The fraud scheme was executed in the following manner:

   a. The Developer and others identified multiple-family buildings to purchase for

3

        conversion to condominiums and for resale of the condominiums as individual units.

b.     The Developer, M.A., SAMUELS, and others recruited straw buyers to purchase the condominiums as so-called investment properties.

c.     The Developer, SAMUELS, and others:

    i.     paid funds to straw buyers for participating in the purchase of condominiums;

    ii.     promised straw buyers that loans to finance the purchase of condominiums would be obtained from the mortgage lenders in the names of straw buyers;

    iii.     promised straw buyers that they did not have to make down payments or pay any funds in connection with the closings associated with the mortgage loans;

    iv.     promised straw buyers that the properties would be maintained on behalf of the straw buyers;

    v.     promised straw buyers that tenants would be obtained on behalf of the straw buyers to rent the condominiums and mortgage payments would be paid from income received from these rents;

    vi.     promised straw buyers that in the event rental income was not sufficient to cover mortgage payments the payments would be made on behalf of the straw buyers for a period of time, in some instances up to one year; and

    vii.     promised straw buyers that they would receive, or share in, the proceeds when the condominiums were resold.

d.     Once straw buyers agreed to participate, the Developer and others engaged mortgage loan brokers and mortgage originators to prepare mortgage loan applications in the

names of the straw buyers and to secure loans from mortgage lenders.

e. The Developer, SAMUELS, and others arranged to prepare mortgage loan applications and supporting documents that: (i) reflected falsely inflated purchase prices for the condominiums; (ii) falsely represented that straw buyers would occupy the condominiums as the straw buyers' "primary" or "secondary" residences; and (iii) falsely represented that straw buyers owned substantial assets held as balances in bank accounts.

f. The Developer and others arranged with M.A. to conduct closings for the mortgage loans in the names of straw buyers. M.A., the Developer, and others also arranged to prepare loan closing documents, including HUD-1 settlement statements, which falsely represented that straw buyers had made down payments and that straw buyers would pay, and paid, other funds at or in connection with the closings associated with the mortgage loans.

g. The Developer, M.A., SAMUELS, and others caused the mortgage lenders to fund mortgage loans through wire transfers to the bank account of M.A.

h. M.A. and others caused mortgage loan proceeds to be disbursed from M.A.'s account to the Developer, in most instances to the Developer's Bank of America account No. xxxxxxxx5111. In turn, the Developer further disbursed a portion of the loan proceeds to others.

i. After closings were conducted by M.A. and mortgage loan proceeds were disbursed, the Developer tendered to M.A. funds in amounts falsely represented on HUD-1 settlement statements as having been paid by straw buyers.

18. Most of the mortgages for the properties involved in the scheme went into default and some went into foreclosure. The scheme caused substantial losses to the mortgage lenders.

## SAMUELS'S ROLE IN THE EXECUTION OF THE SCHEME

### CREATION OF FALSE VERIFICATIONS OF DEPOSIT

19. SAMUELS created false Bank of America Verifications of Deposit ("VOD") in support of mortgage loan applications for the purchase of properties by straw buyers that were part of the scheme to defraud.

20. As part of the procedures employed by First Horizon, National City, and Premium Capital Funding for reviewing and approving real estate loan applications, First Horizon, National City, and Premium Capital Funding routinely relied upon representations that mortgage loan applicants owned personal funds on deposit with banking institutions.

21. After First Horizon, National City, and Premium Capital Funding approved real estate mortgage loans, First Horizon, National City, and Premium Capital Funding routinely used inter-bank wire transfers to transmit loan proceeds from their respective bank accounts to the bank accounts of the attorneys designated to close the real estate loans.

22. In or about October 2007, and in or about April 2008, SAMUELS assisted the Developer and others in fraudulently obtaining mortgage loan proceeds for the purchases of 3 Parkman Street, Unit 2L, Dorchester, Massachusetts, 7 Parkman Street, Unit 1L, Dorchester, Massachusetts, and 672 Adams Street, Unit 2, Dorchester, Massachusetts by creating false Bank of America VODs and communicating the contents of the false VODs to others with the intention that the information contained in VODs would be utilized by the Developer and others to fraudulently secure approval of loan applications submitted to mortgage lenders.

23. A comparison of VODs created by SAMUELS in support of mortgage loan applications and bank records for accounts either referenced in the VODs or accounts that were in the name of straw buyers at the relevant financial institutions, in conjunction with other evidence, shows that information on the VODs SAMUELS created were false. A review of mortgage loan applications submitted on behalf of the straw buyers listed on the false VODs further indicates that false information from the VODs SAMUELS created was put on the relevant loan applications submitted to mortgage lenders for the purposes of securing loans for the property purchases referenced in paragraph 22 of this complaint. The false VODs were also submitted to the relevant mortgage lenders as part of the loan application process.

24. For example, a mortgage loan application for the purchase of 7 Parkman Street, Unit 1L, lists, among other assets of the borrower, a bank account at Bank of America with a balance of $12,401.50. A signature that purports to be the signature of SAMUELS appears on a VOD confirming a balance of $12,401.50 in a bank account at Bank of America, and that VOD is found in the mortgage lender's file. A review of bank records for the account set forth on the VOD shows that there are two deposits in the amounts of $10,000 and $960, respectively, into this account during the relevant time period, but several days after the date listed on the VOD. These deposits appear to increase the account balance to approximately $12,410. The day after these deposits, a check dated the day of the deposits and made out in the amount of $10,960 is debited from this account. This check is made out to T.R., another participant in the scheme, and appears to have lowered the bank account balance to under $2,000.

## PURCHASES AS A STRAW BUYER

25. SAMUELS also acted as a straw buyer on property purchases that were part of the scheme to defraud.

### 7 Parkman Street, Unit 1R
### Dorchester, Massachusetts

26. On or about October 12, 2007, the Developer purchased a multi-family dwelling at 7 Parkman Street, Dorchester, Massachusetts for $690,000.

27. In or about October 2007, the Developer recruited SAMUELS as a straw buyer for condominium Unit 1R. The Developer assured SAMUELS that he would not have to make a significant down payment or any down payment at all and would not have to pay any closing costs. The Developer further assured SAMUELS that he would have no responsibility for making the mortgage payments for a period of time, making repairs, finding tenants to rent the condominiums, collecting rent, applying rental income to property costs, or finding subsequent buyers for resale of the condominiums. The Developer further assured SAMUELS that he would receive, or share in, the proceeds from the resale of the condominiums.

28. In or about October 2007, SAMUELS agreed to participate in the purchase of Unit 1R.

29. On or about October 12, 2007, SAMUELS purchased Unit 1R through a mortgage loan from Salem Five in the amount of $217,200. Witness interviews and documents indicate that false representations in connection with the loan included representations that the purchase price was $271,500, that SAMUELS made a down payment of $2,500 and that SAMUELS paid $59,958.34 at the closing.

8

30. On or about October 12, 2007, Salem Five wired funds to the account of M.A. in connection with the purchase of 7 Parkman Street, Unit 1R.

31. On or about October 12, 2007, M.A. disbursed loan proceeds to the others.

32. On or about October 15, 2007, the Developer tendered to M.A. funds that were falsely represented on the HUD-1 settlement statement as having been previously paid by SAMUELS.

### 672 Adams Street, Unit 3
### Dorchester, Massachusetts

33. On or about April 25, 2008, the Developer bought a multi-family dwelling at 672 Adams Street in Dorchester, Massachusetts, for $435,000.

34. In or about April 2008, the Developer and others recruited SAMUELS as a straw buyer for condominium Unit 3. The Developer and others assured SAMUELS that they would not have to make a significant down payment or any down payment at all and would not have to pay any closing costs. The Developer and others further assured SAMUELS that he would have no responsibility for making the mortgage payments for a period of time, making repairs, finding tenants to rent the condominiums, collecting rent, applying rental income to property costs, or finding subsequent buyers for resale of the condominium. The Developer and others further assured SAMUELS that he would receive, or share in, the proceeds from the resale of the condominiums.

35. In or about April 2008, SAMUELS agreed to participate in the purchases of Unit 3.

36. On or about April 25, 2008, SAMUELS purchased Unit 3 through a mortgage loan from National City in the amount of $246,500. Witness interviews and documents indicated that false representations in connection with the loan included that the purchase price was

$290,000, that the unit was SAMUELS "primary" residence, that SAMUELS made a down payment of $45,500, that SAMUELS owned a bank balance of $80,000, and that SAMUELS paid $1,301.25 at the closing.

37. On or about April 22, 2008, National City wired funds to M.A.'s account in connection with the purchases of 672 Adams Street, Unit 3.

38. From on or about April 25, 2008, through on or about April 28, 2008, M.A. disbursed loan proceeds to others.

39. On or about April 25, 2008, the Developer tendered to M.A. funds that were falsely represented on the HUD-1 settlement statement as having been previously paid by SAMUELS.

### RECRUITMENT OF STRAW BUYER

40. In addition to his other roles in the scheme to defraud, an interview with the straw buyer for the purchase of 365 Centre Street, Unit 3, Dorchester, Massachusetts, among other things, indicates that SAMUELS helped recruit this individual to act as a straw buyer on a property purchase that was part of the scheme to defraud.

41. In or about August 2007, SAMUELS and the Developer recruited K.B-S. for the purchase of 365 Centre Street, Unit 3, Dorchester, Massachusetts as part of the scheme to defraud.

42. On or about August 10, 2007, K.B-S. purchased 365 Centre Street, Unit 3 through a mortgage loan from Gateway Funding in the amount of $259,200. False representations in connection with the mortgage loan for this property purchase included representations that the purchase price was $299,000, that K.B-S. made a down payment of $28,800, and that K.B-S. paid $45,232.01 at the closing.

43. On or about August 10, 2007, SAMUELS and others assisted others in fraudulently obtaining mortgage loan proceeds for the purchase of 365 Centre Street, Unit 3.

## **CONCLUSION**

44. Based on the foregoing, I have probable cause to believe that SAMUELS, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, to wit, wire transfers of mortgage loan proceeds advanced in connection with the putative purchase of real property as listed below, in violation of Title 18, United States Code, Sections 1343 and 2, as follows:

| Date | Property | Wire |
|---|---|---|
| 8/10/07 | 365 Centre Street, Unit 3, Dorchester, MA | $229,631.57 wire transfer of funds from an account at Deutsche Bank Trust Co., Americas, New York, NY, to the account of M.A., No. xxxxxx0057 at Central Cooperative Bank in Somerville, Massachusetts. |
| 10/12/07 | 3 Parkman Street, Unit 2L, Dorchester, MA | $192,575.66 wire transfer of funds from an account at First Tennessee Bank, N.A., Memphis, TN, to the account of M.A., No. xxxxxx0057 at Central Cooperative Bank in Somerville, Massachusetts. |
| 4/18/08 | 7 Parkman Street, Unit 1L, Dorchester, MA | $242,489.12 wire transfer of funds from an account at National City Bank, Indianapolis, IN, to the account of M.A., No. xxxxxx0057 at Central Cooperative Bank in Somerville, Massachusetts. |
| 4/22/08 | 672 Adams Street, Unit 3, Dorchester, MA | $240,121.11 from the account of National City Bank, Indianapolis, IN, to the account of M.A., No. xxxxxx0057 at Central Cooperative Bank in Somerville, Massachusetts. |

| Date | Property | Wire |
|------|----------|------|
| 4/25/08 | 672 Adams Street, Unit 2, Dorchester, MA | $217,500 wire transfer of funds from an account of Colonial Bank, N.A., Kissimee, FL, to the account of M.A., No. xxxxxx0057 at Central Cooperative Bank in Somerville, Massachusetts. |

I hereby certify that the foregoing is true and correct. Executed this 27th day of August, 2010.

_____
AMY Z. DIAMOND
SPECIAL AGENT, FBI


SUBSCRIBED and SWORN to before me
this 27th day of August, 2010.

_____
HONORABLE TIMOTHY S. HILLMAN
UNITED STATES MAGISTRATE JUDGE

12